UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SEVERO FIGUEROA,
        Petitioner,


        v.                                    CIVIL ACTION NO.
                                              09-10943-DJC


PETER ST. AMAND,
        Respondent.



**REPORT AND RECOMMENDATION RE:
PETITION FOR WRIT OF HABEAS CORPUS (DOCKET ENTRY # 1);
RESPONDENT'S MEMORANDUM OF LAW
(DOCKET ENTRY # 20)[1]**

**November 8, 2011**



**BOWLER, U.S.M.J.**

Respondent Peter St. Amand ("respondent"), Superintendent of
the Cedar Junction Massachusetts Correctional Institute in
Walpole, Massachusetts ("Cedar Junction"), seeks dismissal of the
claims in the above styled petition for writ of habeas corpus
filed by petitioner Severo Figueroa ("petitioner"), an inmate at
Cedar Junction.  Respondent submits that the relevant state
court's determinations were not contrary to or an unreasonable
application of clearly established law as determined by the

---
[1]     This court construes the memorandum, which concludes that
"this Court should deny the petition for habeas corpus," as a
motion.

Supreme Court under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d) ("section 2254"). Respondent also argues that one of the grounds of the petition was decided on adequate and independent state law grounds and is barred from review. (Docket Entry # 20).

Petitioner challenges his 2003 conviction for murder in the first degree rendered in the Essex County Superior Court ("the trial court") on the grounds that: (1) "Admission of witness' grand jury testimony for substantive purposes violated petitioner's right of confrontation under the Sixth Amendment to the United States Constitution"; (2) trial counsel failed "to move to revoke order of immunity or otherwise object to the testimony of an immunized witness who the trial court found to be lying" thereby depriving "petitioner of his Sixth Amendment right to confrontation and effective assistance of counsel"; and (3) the "[t]rial court's failure to inquire of the jury venire as to the presumption of innocence violated petitioner's right to a fair trial under the United States Constitution." (Docket Entry # 1, ¶ 12).

<u>PROCEDURAL BACKGROUND</u>

On November 22, 2000, a grand jury sitting in Essex County returned an Indictment against petitioner for the first degree

murder of Nelson Rivera ("the victim").  (Docket Entry # 15, Vol. 1, p. 70).  On November 18, 2003, trial commenced.  (Docket Entry # 15, Vol. 1, p. 78).  On November 26, 2003, the jury returned a verdict of guilty of first degree murder.  (Docket Entry # 15, Vol. 1, p. 77).  That same day petitioner filed a timely notice of appeal (Docket Entry # 15, Vol. 1, p. 77).

At the jury impanelment, the trial judge introduced the parties and read the list of potential witnesses to the jury. (Docket Entry # 15, Vol. 1, pp. 202-203).  The trial judge then asked members of the venire whether they knew anyone whose name he had read, whether they had any bias toward any participant in the case, whether they had a bias concerning the merits of the case and whether they had formed an opinion about the case. (Docket Entry # 15, Vol. 1, pp. 203-214).  The trial judge also stated that the entire burden of proof was on the Commonwealth and that petitioner need not testify, introduce any evidence or make any argument concerning the charges against him.  (Docket Entry # 15, Vol. 1, pp. 209).  The trial judge did not, however, specifically state that petitioner was presumed innocent. Petitioner's counsel did not object to this omission.

In his grand jury testimony, witness Javier Laboy ("Laboy") stated that petitioner had said to him on the night of the victim's death, "Give me a ride out of town, I just shot

somebody." (Docket Entry # 15, Vol. 2, p. 191). "Approximately
ten months later, Laboy signed a statement whereby he recanted
his entire testimony, stating that he was impaired by marijuana
and cocaine on the evening of the murder and that he gave someone
else a ride from the party." Commonwealth v Figueroa, 887 N.E.2d
at 1046.

On voir dire, Laboy was questioned about the evening of the
murder. (Docket Entry # 15, Vol. 2, pp. 173-195). He was able
to recall a number of specific details but unable to recall his
testimony to the grand jury that petitioner asked Laboy to take
him out of town and admitted that he just shot someone. (Docket
Entry # 15, Vol. 2, pp. 189-190). The Commonwealth moved to have
the relevant part of Laboy's grand jury testimony admitted
substantively. (Docket Entry # 15, Vol. 2, pp. 196-197).
Petitioner objected, stating that it would violate his right to
confrontation under the Sixth Amendment. (Docket Entry # 15,
Vol. 2, p. 198). In response to petitioner's objection, the
trial judge allowed use of the grand jury testimony for
substantive purposes. (Docket Entry # 15, Vol. 2, pp. 200-203).
The trial judge made the following findings:

> Prior inconsistent testimony can be admitted for
> substantive purposes if, upon a voir dire, I determine that
> the following three conditions have been met:  first, that
> the witness can be effectively cross examined at trial
> regarding the accuracy of the statement and I'm fully
> satisfied, Mr. Buso, that you are capable of effectively

cross examining this witness at trial regarding the accuracy
of the statements at issue.  And, in fact, you've already
demonstrated that ability through your cross examination
during this voir dire.

Secondly, I must find that the statement was not
coerced and was more than a mere confirmation or denial of
an allegation by the interrogator; that is, that the
statement must be that of the witness and not of the
interrogator.  And, I am satisfied, in reading the
transcript, that the narrative response on the part of the
witness to the questions asked, constitute his statement and
his testimony.  Now, those two preliminary findings are
required in the case of <u>Commonwealth v. Clements</u>, 436 Mass.
190 at pages 192, 193, a 2002 case, and other cases that
have been decided before and after the <u>Clements</u> case.

Now, the third finding I must make, has to do with
whether this witness's claimed lack of memory has been
fabricated.  And, I find that it is.  That is, where a
witness asserts a lack of memory of the event and a lack of
memory of prior testimony, the judge must make a preliminary
finding that the witness's claimed lack of memory has been
fabricated.  I've observed this defendant both today and at
the hearing whether to grant immunity.  I've observed this
witness's demeanor on this witness stand, and both of those
observations suggest to me that this change of testimony on
his part is contrived.

Furthermore, the answers to his questions support those
observations.  The Grand Jury testimony in this case was on
November 8th, over a week after the alleged shooting.
There's no suggestion here that this defendant was under the
influence of anything when he gave his grand jury testimony.
That Grand Jury testimony was powerful testimony, and I find
no reason to believe that he has forgotten that testimony
other than through his own fabrication.  It seems to me that
what we have here, and this is the point that you make, Mr.
Buso, we have selective recall.  He has recalled observing
at the time of the shooting, and he recalls testifying
before the Grand Jury that [petitioner] got into his car,
that [petitioner] asked him for a ride.  He gave
[petitioner] a ride and for some reason he has forgotten the
key element of his testimony:  that is, that [petitioner]
told him he had shot somebody.  And that's selective recall
and that selective memory seems to me contrived.

Lastly, we have here an invocation of his 5th Amendment privileges not to incriminate himself. It occurs to me that he knew, and has recalled that [petitioner] said to him, "I just killed somebody," and this witness's fear is that he will be prosecuted as an accessory after that shooting. If he didn't think that [petitioner] had shot somebody, it seems to me he wouldn't have any fear of being prosecuted, and so that is totally inconsistent that he, A) forgot that he had testified earlier that [petitioner] had told him he had shot somebody, had forgotten that [petitioner] told him that at the time of the shooting, and then invoke his 5th Amendment privilege.

So, I find that the witness has falsified his lack of memory, both with respect to the event and to his prior testimony before the Grand Jury and I'm going to allow the Commonwealth to admit the Grand Jury testimony as substantive evidence.

(Docket Entry # 15, Vol. 2, pp. 200-203).


## FACTUAL BACKGROUND

The Massachusetts Supreme Judicial Court ("the SJC")

summarized the facts as follows:

The evidence against the defendant was introduced through the testimony of Miguel Rodriguez and Javier Laboy. Both had been gang members, had extensive criminal records, and had cooperation agreements with the Commonwealth.

In the late evening of October 28, 2000, the victim was driving around Lawrence with Rodriguez. The pair decided to attend a Halloween party at a home on Washington Street. At about midnight, as the victim pulled his car up in front of the house, the defendant hit the back of the car and said to Rodriguez, "Step out of the car. Let's knuckle up." Rodriguez got out of the car. At first he thought the defendant wanted to fight, but then realized that the defendant was joking.

He and the defendant spoke. The defendant then asked

6

Rodriguez what he was doing with the victim, stating, "Take [the victim] out of here before I blast him." Rodriguez got back in the car and told the victim to "take off." Rodriguez saw the defendant put his arm through the car's window and heard three shots. The mortally wounded victim drove away.

Rodriguez noticed that the victim was wounded and asked him to pull the car over so that he could drive the victim to a hospital. The victim said that he would be all right, but within a short distance, he said, "I'm dead," and fell over onto Rodriguez's lap. Rodriguez gained control of the car and stopped it. After trying and failing to get the victim out of the driver's side of the car and into its back seat, he flagged down a police cruiser.

The victim had been shot twice in the left arm. One of the bullets went through his arm into his chest. The victim died at a hospital of a gunshot wound to the abdominal aorta, which caused hemorrhaging. Two bullets were recovered from the victim, one from his left arm and one from the muscles in his abdominal wall. No gun was ever found.

In the meantime, Laboy had been at the Halloween party and had seen the defendant arguing with the victim and Rodriguez. He heard shots and ran out of the house and across the street to his automobile. As he was about to drive away, the defendant asked him for a ride. Once in the vehicle, Laboy asked the defendant what had happened. The defendant stated, "I just shot somebody, can you get me out of here." The defendant also asked Laboy to take him "out of town." Laboy refused and instead took the defendant to a home on Front Street. [2]

---

[2] At this juncture, the SJC inserted the following footnote:

The defendant did not testify at trial. His defense was that he was being framed by a gang called the Latin Gangster Disciples, of which at least Rodriguez and Laboy's brother were erstwhile members, and that the two witnesses against him were lying to get help from the Commonwealth with various criminal charges. Through cross examination the defendant showed that, over time, the pair had changed their stories about the events that night, that only two shots were fired, that fingerprint evidence did not tie the

<u>Commonwealth v. Figueroa</u>, 887 N.E.2d at 1042-43.

Trooper Michael Coleman, an expert on ballistics and firearms identification, testified at trial that he did a thorough search of the car and observed an entrance and exit hole through the front driver's side door, which was consistent with being caused by a discharged projectile. (Docket Entry # 15, Vol. 2, p. 427). No other ballistic evidence was recovered from the vehicle. (Docket Entry # 15, Vol. 2, p. 427).

Lawrence Police Officer Shawn Conway ("Sergeant Conway"), testified that on October 29, 2000, shortly after midnight he was dispatched to the vicinity of Broadway and 62 Washington Street. Sergeant Conway testified that as he was driving Miguel Rodriguez ("Rodriguez") flagged him down for assistance. (Docket Entry # 15, Vol. 1, p. 452).

Detective DiBenedetto, who was also at the scene, testified that he patted down and spoke with Rodriguez, searched the vehicle and surrounding area and set up a crime scene. (Docket

---

defendant to the crime, and that there was no evidence that the shots fired were at a very close range. He emphasized that there was no evidence against the defendant other than the testimony of the two witnesses. He also called one witness, an emergency medical technician, who testified that, while he was tending to the victim at the scene, he asked the victim if he knew who shot him and the victim said that he did not.

<u>Commonwealth v. Figueroa</u>, 887 N.E.2d at 1043.

Entry # 15, Vol. 2, pp. 156-157).  Detective DiBendetto further
testified that Rodriguez informed him that he was a passenger in
the car driving down Broadway from Manchester Street when the
driver told him that he had been hit then pulled over the car and
they flagged down Sergeant Conway.  (Docket Entry # 15, Vol. 2,
pp. 157-158).  Detective DiBendetto testified that Rodriguez also
stated to the police that he did not know who shot the victim.
(Docket Entry # 15, Vol. 1, p. 502).

Shortly thereafter, Michael Twomey ("Twomey"), an emergency
medical technician, arrived at the location of the car.  (Docket
Entry # 15, Vol. 2, p. 430).  He testified at trial that he
assisted the victim and transferred him to the ambulance.
(Docket Entry # 15, Vol. 2, p. 432).  Twomey testified that he
asked the victim if he knew who shot him and the victim
responded, "No, I do not know who shot me."  (Docket Entry # 15,
Vol. 2, p. 434).

## DISCUSSION

I. Standard of Review

These proceedings are governed by 28 U.S.C. § 2254 ("section
2254") because petitioner filed this petition after the statutes'
April 24, 1996 effective date.  Section 2254(d) establishes "two
categories of cases in which a state prisoner may obtain federal

habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404 (2000). Under the first category, "a state court determination is 'contrary to' clearly established law if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts"); Williams v. Taylor, 529 U.S. at 405-406 (same).

Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted). An unreasonable application of clearly established federal law occurs if the state court "'correctly identifies the governing legal principles, but (i) applies those principles to

the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.'" Gomes v. Brady, 564 F.3d at 537; see Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009).

"'[C]learly established Federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.'" Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir.), cert. denied, 130 S.Ct. 639 (2009). The inquiry is an objective one, see McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002), insofar as the decision "must have been 'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003).

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence. Williams v. Taylor, 529 U.S. at 365; accord Wiggins v. Smith, 539 U.S. at 520-521 ("state court's decision must have been more than incorrect or erroneous"). Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

11

incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. at 365; accord Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold").  When "it is the state court's application of governing federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'"  Waddington v. Sarausad, 129 S.Ct. 823, 831 (2009); accord Foxworth v. St. Amand, 570 F.3d at 425 ("state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error").

Section 2254(d) also "applies even where there has been a summary denial" such as where the state court denies a motion based on a "substantive ground that it is without merit."  Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011) (state court denied each state petition "'on the substantive ground that it is without merit'").  With these principles in mind, this court turns to the grounds for habeas relief.

A.  Ground One:

Petitioner asserts that the admission of Leboy's grand jury testimony for substantive purposes violated his right to confrontation under the Sixth Amendment because the witness was

effectively unavailable to be cross-examined.  Respondent argues
that the SJC's decision affirming the trial court's decision to
allow the substantive admission of grand jury testimony was not
contrary to or an unreasonable application of clearly established
Supreme Court case law regarding the Confrontation Clause of the
Sixth Amendment.

Grants of immunity seek "a rational accommodation between
the imperatives of the [Fifth Amendment] privilege [against self-
incrimination] and the legitimate demands of government to compel
citizens to testify." Kastigar v. U.S., 406 U.S. 441, 446
(1972).  Furthermore, "No testimony or other information
compelled under the order [of immunity] may be used against the
witness in any criminal case, except a prosecution for perjury,
giving a false statement, or otherwise failing to comply with an
order." Kastigar at 449.

Petitioner fails in his argument that the SJC's decision
that Laboy was effectively unavailable to be cross-examined was
contrary to or an unreasonable application of Supreme Court
jurisprudence relative to the Confrontation Clause.  The
Confrontation Clause commands "not that evidence be reliable, but
that reliability be assessed in a particular manner:  by testing
in the crucible of cross-examination." Crawford v. Washington,
541 U.S. 36, 61 (2004).  The testimony Laboy gave at trial did

not render him unavailable to be cross-examined.  The trial court admitted Laboy's grand jury testimony on a substantial basis after the trial judge determined that Laboy's lack of recollection was not credible.  The admission of Laboy's grand jury testimony was therefore proper under Crawford and Kastigar because Laboy was able to be effectively cross-examined at trial.  Under Crawford, a witness who perjures himself still satisfies the Confrontation Clause of the Sixth Amendment because he is still present to have his story and demeanor scrutinized on the witness stand.  Crawford, 541 U.S. at 61.  The Supreme Court stated in Deleware v. Fensterer, 474 U.S. 15 (1985) that, "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Id. at 20 (emphasis in original).  The Court in Fensterer also noted that, "[T]he cross-examiner is not only permitted to delve into the witness' story to test the witness' perception and memory, but [also] . . . allowed to impeach, i.e., discredit, the witness."  Id. at 19; see also Mattox v. United States, 156 U.S. 237, 242-43 (1895).

Purported loss of memory does not render a witness unavailable to testify.  U.S. v. Owens, 484 U.S. 554, 562 (1988).  As explained by the Court in Owens, "[A]ssertions of memory loss

14

. . . is often the very result sought to be produced in cross-examination, and can be effective in destroying the force of the prior statement." Id. at 562.

In Owens, a testator experienced memory loss as a result of an injury suffered in an attack. Despite having his memory severely impaired, the testator described the attack and named the defendant as his attacker. The Supreme Court explained that:

> the Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the fact finder the reasons for giving scant weight to the witness's testimony.

Id. at 558; see also California v. Green, 399 U.S. 149, 202 (1970) ("[i]nability to remember pertinent events . . . does cast doubt [on testator's earlier assertions]"). The SJC's decision affirming the substantive admission of Laboy's grand jury testimony at trial was not contrary to or an unreasonable application of Supreme Court precedent. Indeed, the decision was acceptable under Owens and Green because Laboy's testimony was subject to cross-examination by the defense which could properly expose the potential shortcomings of Laboy's testimony as a whole. The Court in Owens ultimately held that loss of memory does not render a witness unavailable. Owens, at 564. Thus, the

15

SJC's decision to affirm the trial court's admission of Laboy's grand jury testimony on a substantive basis was not contrary to or an unreasonable application of clearly established Supreme Court law.

Petitioner improperly relies on Douglas v. Alabama, 380 U.S. 415 (1965). In Douglas, a witness was deemed unavailable when he refused to answer questions. Petitioner asserts that Laboy, like the witness in Douglas, "appeared" but was unable to be cross-examined. The case at bar, however, is distinguishable from Douglas in that Laboy did not refuse to answer any questions, but asserted only that he had no recollection of certain events. Cf. Id. at 419. Laboy was confronted by the defense in accordance with the holding of Crawford. Accordingly, SJC's decision was not contrary to or an unreasonable application of clearly established Supreme Court law within the meaning of AEDPA.

B. Ground Two:

Petitioner next claims that trial counsel was ineffective by failing to move to revoke the order of immunity granted to Laboy or to otherwise object to the testimony of an immunized witness who the trial court found to be lying. Respondent argues that trial counsel's assistance was not ineffective by not moving to have Laboy's grant of immunity revoked because petitioner lacked standing to contest the grant of immunity to a prosecution

witness.

An ineffective assistance of counsel claim is "a mixed question of law and fact and should therefore be reviewed under the 'unreasonable application' clause of section 2254(d)." Shuman v. Spencer, 636 F.3d 24, 31 (1st Cir. 2011) (quoting Yeboah-Sefah, 556 F.3d at 70). The SJC rejected the ineffective assistance of trial counsel claim under the statutory standard of section 33E applicable to appeals of first degree murder convictions. That standard is "more favorable to the defendant than the federal constitutional standard articulated by the Supreme Court in Strickland." Knight v. Spencer, 447 F.3d 6, 10 (1st Cir. 2006); accord Commonwealth v. Wright, 584 N.E.2d 621, 624 (Mass. 1992); ("statutory standard of § 33E is more favorable to a defendant than is the constitutional standard for determining the ineffectiveness of counsel"); see generally Commonwealth v. Mello, 649 N.E.2d 1106, 1118 & n.16 (Mass. 1995) (noting that if state ineffective counsel standard is met then federal standard is met). Accordingly, this court "presume[s] the federal law adjudication [of the SJC] to be subsumed within the state law adjudication" and therefore "'adjudicated on the merits' within the meaning of § 2254." McCambridge v. Hall, 303 F.3d at 35.

The "more favorable 'substantial likelihood of a miscarriage

of justice' standard" is not "'contrary to' the Strickland

criterion." Knight v. Spencer, 447 F.3d at 16. This court

therefore turns to the unreasonable application prong of section

2254(d) review.

The Supreme Court "recently reinforced the 'doubly'

deferential standard that applies to a state prisoner's claims in

a federal habeas petition that a state court has unreasonably

applied the Strickland principles." Jewett v. Brady, 634 F.3d

67, 75 (1st Cir. 2011) (quoting Harrington v. Richter, 131 S.Ct.

770, 788 (2011)). Under Strickland v. Washington, 466 U.S. 668

(1984), the petitioner has the burden to show by a preponderance

of the evidence that: "(1) counsel's performance fell below an

objective standard of reasonableness, and (2) there is a

reasonable probability that, but for counsel's error, the result

of the proceedings would have been different." Smullen v. United

States, 94 F.3d 20, 23 (1st Cir. 1996); accord Gonzalez-Soberal

v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (same).

Under the first prong, the petitioner must show that

"'counsel made errors so serious that counsel was not functioning

as the "counsel" guaranteed the defendant by the Sixth

Amendment.'" Smullen v. United States, 94 F.3d at 23 (quoting

Strickland v. Washington, 466 U.S. at 687). Under Strickland

there is also "a strong presumption that counsel's conduct falls

18

within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. Consequently, the ineffective assistance prong is satisfied "only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'" Knight v. Spencer, 447 F.3d at 15.

The second Strickland prong requires a showing that "counsel's errors prejudiced the defense." Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001). The proper focus is on "the 'fundamental fairness of the proceeding.'" Id. at 278; accord Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (prejudice prong focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). A "reasonable probability" is therefore "a probability sufficient to undermine confidence in the outcome." Knight v. Spencer, 447 F.3d at 15 (internal quotation marks omitted). The petitioner must show "that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687; see also Lockhart v. Fretwell, 506 U.S. at 372 ("[u]nreliability or unfairness does not result

if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him").

In the case at bar, petitioner argues that trial counsel was ineffective when he failed to move to revoke Laboy's immunity. In Massachusetts, the granting of immunity to a witness is discretionary.  See Mass. Gen. Laws ch. 233, § 20E.  Furthermore, state law establishes that, "without qualification, a defendant 'has no standing to argue that the testimony of . . . purportedly immunized witnesses [is] the product of improper grants of immunity.'"  Commonwealth v. Figueroa, 887 N.E.2d at 1049 (citing Smith v. Commonwealth, 436 N.E.2d 899); see Commonwealth v. Mattos, 536 N.E.2d 1072 (Mass. 1989) (counsel not ineffective where the defendant had no standing to challenge search and seizure).

Under the deficient performance prong, an attorney renders ineffective assistance where he fails to "raise an important, obvious defense without any imaginable strategic or tactical reason for the omission."  Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999) (failure of attorney to raise government's untimely filing of information seeking sentence enhancement was deficient inasmuch as the claim "was a clear winner and presenting it would have risked nothing"); see Smith v. Murray,

447 U.S. 527, 536 (1986) (stating that "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy").  In the case at bar, challenging the order of immunity was not an important or obvious defense.  On the contrary, it presented an extremely weak argument.

Petitioner points out that immunity does not apply to perjury committed while under the grant of immunity.  Commonwealth v. Steinberg 536 N.E.2d 606, 610 (1989); see also Glickstein v. United States, 222 U.S. 139, 142 (1911).  In light of the Massachusetts law that petitioner lacked standing to raise the argument, however, the SJC's decision that trial counsel was not ineffective for not seeking to revoke Laboy's immunity was not an unreasonable application or clearly established Supreme Court precedent.

Petitioner also relies on United States v. Angiulo, 897 F.2d 1169 (1st Cir. 1990), which explains that a defendant may have standing under certain circumstances to challenge the grant, denial or revocation of a witness' immunity where the effect of the immunity is to distort the jury's fact finding process.  Id. at 1191.  Petitioner improperly applies a narrow theory in Angiulo to the facts at bar.  The theory of standing in Angiulo concerns the immunity of witnesses called by the defense.  The

21

court in _Angiulo_ called into question the government's power to deny immunity and prevent witnesses from freely testifying in order to withhold exculpatory testimony. _Id._ at 1190. The grant of immunity petitioner challenges does not fall within the narrow circumstantial category defined by _Angiulo_. Laboy was testifying for the prosecution, not the defense, and his immunity was not granted to present exculpatory testimony.

Accordingly, the SJC's decision rejecting the ineffective assistance of trial counsel claim was not an unreasonable application of _Strickland_. Trial counsel could not have been reasonably expected to raise a challenge to Laboy's grant of immunity given the lack of standing and the discretionary nature of the decision to grant immunity.

C. _Ground Three_:

Respondent argues that ground three is in procedural default because the state court decided the claim on an adequate and independent state law ground and petitioner fails to show cause and prejudice for the procedural default. Petitioner maintains that the trial judge improperly failed to inquire of the venire as to the presumption of innocence. The SJC found that petitioner waived this claim when he failed to object to the omission. _Commonwealth v. Figueroa_, 887 N.E.2d at 1043-1046.

A long standing rule bars federal courts from reviewing

state court decisions that rest on "independent and adequate state ground[s]." Trest v. Cain, 522 U.S. 87, 118 (1997); see also Torres v. Dubois, 174 F.3d 43, 45-46 (1st Cir. 1999). The doctrine bars a federal court from "reviewing federal questions which the state court declined to hear because the [petitioner] failed to meet a state procedural requirement." Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997); see also Burks v. DuBois, 55 F.3d 712, 716 (1st Cir. 1995) (federal habeas review generally precluded "when a state court has reached its decision on the basis of an adequate and independent state-law ground").

"A defendant's failure to object in a timely manner at his state criminal trial may constitute an adequate and independent state ground sufficient to trigger the bar rule so long as the state has a consistently applied contemporaneous objection requirement and the state court has not waived it in the particular case by resting its decision on some other ground." Burks v. DuBois, 55 F.3d at 716 (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). The Massachusetts contemporaneous objection rule is "firmly entrenched," Brewer v. Marshall, 119 F.3d at 1001; accord Puleio v. Vose, 830 F.2d 1197, 1199 (1st Cir. 1987), and therefore consistently enforced.

The SJC's review of a claim under the miscarriage of justice standard amounts to "a state law review and does not constitute a

waiver of procedural default." <u>Ortiz v. DuBois</u>, 19 F.3d 708, 714 n.6 (1st Cir. 1994) (paraphrasing <u>Tart v. Commonwealth of Massachusetts</u>, 949 F.2d 490, 496 (1st Cir. 1991)). "Miscarriage of justice review by the SJC under ' 33E does not itself create independent rights in habeas petitioners." <u>Gunter v. Maloney</u>, 291 F.3d 74, 79 (1st Cir. 2002). In other words, the SJC's review went not to the federal constitutional question but, rather, to "the state law question of whether a substantial risk of a miscarriage of justice was present." <u>Puleio v. Vose</u>, 830 F.2d at 1200 (internal quotation marks omitted).

On the other hand, "If the last state court to review a petitioner's case reaches the merits of a federal claim presented to it, any bar to federal court review is lifted." <u>Gunter v. Maloney</u>, 291 F.3d at 80. Procedural default precludes habeas review of the federal constitutional claim "only if the last state court rendering a judgment in the case rests its judgment on the procedural default rule." <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989) (further noting that state court should clearly express its reliance on the independent state law ground). Addressing the federal constitutional claim as an alternative holding does not amount to a waiver of the state procedural ground as a basis for the decision or allow this court to ignore the state court's procedural holding and address the merits of

the federal constitutional claim absent cause or prejudice or a fundamental miscarriage of justice.  See Harris v. Reed, 489 U.S. at 1044 n.10.

Here, the SJC explained that "defense counsel did not object to" the omission of the presumption of innocence language. Commonwealth v. Figueroa, 887 N.E.2d at 1043.  The court then proceeded "to determine whether there was a substantial likelihood of a miscarriage of justice."  Id. Accordingly, given this adequate and independent state law ground, this court turns to the issue of whether there was cause and prejudice for the failure to object to the omission.

As to cause, ordinarily the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Burks v. DuBois, 55 F.3d at 716-17 (citing Murray v. Carrier, 477 U.S. at 488); Magee v. Harshbarger, 16 F.3d 469, 471 (1ˢᵗ Cir. 1994) (quoting Murray v. Carrier, 477 U.S. at 488).  For example, two such objective impediments consist of "showing that the factual or legal basis for the claim was not reasonably available to counsel or that 'some interference by officials' made compliance impracticable." Murray v. Carrier, 477 U.S. at 488 (citations omitted).  There were no such impediments in the case at bar. Notwithstanding an

adequate opportunity, trial counsel simply failed to lodge a timely objection to the omission.

Because petitioner fails to show cause, this court need not address the prejudice prong.  See Magee v. Harshbarger, 16 F.3d 469, 472 (1st Cir. 1994) (declining to address prejudice prong "[b]ecause the cause and prejudice requirement is conjunctive"); see also Burks v. DuBois, 55 F.3d at 716 n.3 (not addressing prejudice prong because court found no cause).  Notwithstanding the absence of cause, a federal court may proceed to address the merits "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray v. Carrier, 477 U.S. at 496; see Hall v. DiPaolo, 986 F.2d 7, 10 (1st Cir. 1993).  Stated otherwise, "Even absent a showing of cause and prejudice," a federal court "may overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice."  Burks v. DuBois, 55 F.3d at 717; see also Gunter v. Maloney, 291 F.3d at 83 (to show "fundamental miscarriage of justice . . . in the habeas context, '[the] petitioner must establish actual innocence'").  In order to establish a fundamental miscarriage of justice, the "'petitioner must show that it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'"

<u>Gunter v. Maloney</u>, 291 F.3d at 83.  Here, the record completely

belies the presence of actual innocence.


CONCLUSION

In accordance with the foregoing discussion, this court

**RECOMMENDS**[3] this petition for habeas corpus (Docket Entry # 1) be

**DISMISSED** and the motion to dismiss the petition (Docket Entry #

20) be **ALLOWED.**


       /S/ Marianne B. Bowler   
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[3]    Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.